934 So.2d 708 (2006)
MSOF CORPORATION and Jay Paul Leblanc
v.
EXXON CORPORATION, Exxon Chemical Company, U.S.S. Chemical Company, Copolymer Rubber and Chemical Corporation, Uniroyal Corporation, Dow Chemical Company, Ethyl Corporation, Shell Chemical *709 Corporation, American Hoechst Co. (f/k/a Foster Grant Company), Allied Chemical Corporation, Rubicon Chemical Company, Petro Processors of Louisiana, Inc., Rollins Environmental Services (LA), Inc., Robert Bolger, J.W. Street, W.L. Rainey, NPC Services, Inc., and XYZ Insurance Company.
No. 2004 CA 0988.
Court of Appeal of Louisiana, First Circuit.
December 22, 2005.
Rehearing Denied May 30, 2006.
*711 Charles S. Lambert, Jr., J. Burton LeBlanc, III, J. Burton LeBlanc, IV, J. Burton LeBlanc, Jr., Baton Rouge, Patrick W. Pendley, Plaquemine, for Plaintiffs-Appellants MSOF Corp. and Jay Paul LeBlanc.
Gerald L. Walter, Jr., Anne J. Crochet, Baton Rouge, for Defendants-Appellees NPC Services, Inc., Robert Bolger, J.W. Street, and W.L. Rainey.
William R. D'Armond, Sandra Edwards, Baton Rouge, for Defendants-Appellees Exxon Mobil Corp., Crompton Manufacturing Co., Inc., DSM Copolymer, and U.S. Steel Corp.
David M. Bienvenu, Jr., Baton Rouge, for Defendants-Appellees Ethyl Corp., The Dow Chemical Co., and Shell Oil Co.
Stephen Glusman, Baton Rouge, for Defendant-Appellee Celanese Corp. (formerly Hoeschst Celanese Corp.)
Craig Wyman, New Orleans, for Defendant-Appellee Honeywell International Inc.
Before: CARTER, C.J., PARRO, KUHN, DOWNING, and WELCH, JJ.
*712 WELCH, J.
This is an appeal by the plaintiffs, MSOF Corporation and Jay Paul LeBlanc, from a judgment granting a motion for summary judgment filed by the defendants, NPC Services, Inc., Ethyl Corporation, Shell Chemical, LP, The Dow Chemical Company, ExxonMobil Corporation, United States Steel Corporation, DSM Copolymer, Inc., Crompton Manufacturing Company, Inc., Honeywell International, Inc., Celanese Corporation (formerly Hoechst Celanese Corporation), Robert Bolger, J.W. Street, and W.L. Rainey, and dismissing the plaintiffs' suit for damages. For the following reasons, we reverse the judgment of the trial court and remand this matter for further proceedings.

Factual and Procedural History
The plaintiffs are landowners of approximately 1,850 acres located in the southern portion of watershed area known as "Devil's Swamp," which is situated in East Baton Rouge Parish, Louisiana.
Petro Processors, Inc. ("PPI") was the owner and operator of two hazardous waste disposal facilities in the northern portion of Devil's Swamp, known as the Brooklawn site and the Scenic Highway site. Immediately adjacent to, and partially inclusive of, the Brooklawn site is an area referred to as Section 45. It is undisputed that toxic waste from PPI's Brooklawn site contaminated a portion of Section 45 where Bayou Baton Rouge enters Devil's Swamp.[1] The plaintiffs' property is located approximately three miles south/southeast of Section 45 and the Brooklawn site.
With the exception of NPC Services, Inc. ("NPC"), the corporate defendants were industrial generators of hazardous waste that made use of the PPI waste disposal facilities. NPC was formed by these corporate defendants to clean up or remediate the PPI waste sites in accordance with a federal consent decree.[2] Robert Bolger was president of NPC, and J.W. Street and W.L. Rainey were executive officers of NPC.
On July 9, 1993, the Louisiana Department of Health and Hospitals ("DHH") and the Louisiana Department of Environmental Quality ("DEQ") issued a health advisory for the entire Devil's Swamp area and Bayou Baton Rouge area based on health risks posed by detected contamination. The PPI waste disposal sites were subsequently identified as the source of the contamination. As landowners within the area of concern, the plaintiffs received the health advisory.[3] Thereafter, on July *713 5, 1994, the plaintiffs, on behalf of themselves and all other similarly situated landowners, filed this suit in a state district court, alleging that the defendants were responsible for contaminating their land with toxic chemicals and that the plaintiffs were entitled to compensatory damages commensurate with costs of the restoration and remediation of their property and to exemplary damages under La. C.C. art. 2315.3, as the plaintiffs' damages were caused by the defendants' wanton and reckless disregard for public safety in the storage and handling of the hazardous wastes disposed of at the PPI facilities.
The plaintiffs' case was removed to a federal district court pursuant to a motion filed by the defendants. Subsequently, the defendants moved for summary judgment. The federal court granted the motion for summary judgment, finding that the plaintiffs had not produced sufficient evidence to create a genuine issue of material fact relating to an essential element of their claim, and therefore, dismissed the plaintiffs' suit. On appeal, the federal appellate court found that the federal district court lacked subject matter jurisdiction over the claim and vacated the judgment with instructions that the matter be remanded to the state court from which it was removed. See MSOF Corp. v. Exxon Corp., 295 F.3d 485 (5th Cir.2002).
On remand to the state district court, the defendants moved to have their motion for summary judgment previously filed in federal court set for hearing. By Judgment signed on January 27, 2004, the trial court granted the defendants' motion for summary judgment, and the plaintiffs now appeal.

Assignments of Error
The plaintiffs make the following assignments of error:
1. The trial court erred by granting summary judgment because the plaintiffs produced evidence that hexachlorobenzene ("HCB") and hexachlorobutadien ("HCBD"), admitted by the defendants to be their "signature contaminants" released from the PPI waste disposal sites, have been found throughout the Devil's Swamp watershed, including South Devil's Swamp where the plaintiffs' property is located.
2. The trial court erred by granting summary judgment when plaintiffs established a cause of action under La. C.C. arts. 667, 2315, and 2317.
3. The trial court erred by failing to admit and consider the testimony of the plaintiffs' expert, Dr. Paul H. Templet, that contamination from the PPI waste disposal sites migrated to the plaintiffs' property.
4. The trial court erred by striking the testimony of the plaintiffs' expert, Dr. David A. Link, that contamination from the PPI waste disposal sites migrated to the plaintiffs' property.
5. The trial court erred in granting summary judgment because there was a conflict between the opinions of the parties' experts.
6. The trial court erred by shifting the burden of proof to plaintiffs when the defendants did not carry their burden under La. C.C.P. art. 966.
7. The trial court erred by admitting and relying on the testimony of defendants' experts, Dr. Shahrokh Rouhani and Dr. Edwin M. Roberts, which testimony *714 was based on unscientific and unreliable data and testing.

Summary Judgment
A motion for summary judgment is a procedural device used to avoid a full-scale trial when there is no genuine issue of material fact. Craig v. Bantek West, Inc., XXXX-XXXX (La.App. 1st Cir.9/17/04), 885 So.2d 1241, 1244-45; Western Sizzlin Steakhouse v. McDuffie, XXXX-XXXX (La. App. 1st Cir.3/28/03), 844 So.2d 355, 357, writ denied, XXXX-XXXX (La.6/20/03), 847 So.2d 1236. The summary judgment procedure is favored and is designed to secure the just, speedy, and inexpensive determination of every action. La. C.C.P. art. 966(A)(2). The motion should be granted only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue as to material fact and that mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(B).
On a motion for summary judgment, the burden of proof is on the mover. If, however, the mover will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the mover's burden on the motion does not require that all essential elements of the adverse party's claim, action, or defense be negated. Instead, the mover need only point out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. Thereafter, the adverse party must produce factual evidence sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial. If the adverse party fails to meet this burden, there is no genuine issue of material fact, and the mover is entitled to summary judgment. La. C.C.P. art. 966(C)(2); Robles v. Exxon-Mobile, XXXX-XXXX (La.App. 1st Cir.3/28/03), 844 So.2d 339, 341. Because it is the applicable substantive law that determines materiality, whether a particular fact in dispute is material can be seen only in light of the substantive law applicable to the case. Foreman v. Danos and Curole Marine Contractors, Inc., 97-2038 (La.App. 1st Cir.9/25/98), 722 So.2d 1, 4, writ denied, 98-2703 (La.12/18/98), 734 So.2d 637.
In this case, the plaintiffs' petition for damages is based on negligence, strict liability, trespass, and nuisance. In order to prevail in their claims based on negligence, strict liability, and trespass, the plaintiffs will have to prove by a preponderance of the evidence that toxic chemicals originating from a PPI waste disposal site have contaminated and thus caused damage to the plaintiffs' land in the southern portion of Devil's Swamp. In order to succeed in their claim based on nuisance, the plaintiffs will have to prove by a preponderance of the evidence that toxic chemicals released by the PPI waste disposal site have caused damage to the plaintiffs by limiting or depriving the plaintiffs of their ability to use or enjoy their land. See La. C.C. arts. 667-669; see also Spiker v. City of Baton Rouge/Parish of East Baton Rouge, XXXX-XXXX (La.App. 1st Cir.11/9/01), 804 So.2d 659, 663-64, writ denied, XXXX-XXXX (La.4/26/02), 814 So.2d 564, and writ denied, XXXX-XXXX (La.4/26/02), 814 So.2d 568; Prentice Oil & Gas Co. v. Caldwell, 355 So.2d 1327, 1330 (La.App. 1st Cir. 1977); writ denied, 358 So.2d 640 (La. 1978); Ewell v. Petro Processors of Louisiana, Inc., 364 So.2d 604, 606 (La.App. 1st Cir.1978), writ denied, 366 So.2d 575 (La. 1979).
In their motion for summary judgment, the defendants assert that there is no genuine issue of material fact as to the lack of contamination on the plaintiffs' property, which originated from a PPI waste disposal site. In support of their motion for *715 summary judgment, the defendants submitted the following evidence: affidavits of Dr. Shahrokh Rouhani, dated April 26, 1995 and October 28, 1994; an order issued by the federal district court on December 12, 1994, regarding the defendants' initial discovery requests; the plaintiffs' answers to interrogatories pursuant to such order, including an affidavit of Dr. Link, dated January 30, 1995; the February 23, 1995 deposition of Dr. Link; the March 6, 1995 deposition of Dr. Rouhani; affidavits of Dr. Roberts, dated April 28, 1995 and October 1, 2003; and an affidavit of Dr. John Green, dated April 21, 1995.
According to the affidavits of Dr. Rouhani and the April 28, 1995 affidavit of Dr. Roberts, contamination from a PPI waste disposal site is distinguished by HCB and HCBDthey are the "signature" contaminants for PPI waste and will be found in any soil contaminated by PPI waste.[4] HCB and HCBD identify and distinguish waste from the PPI waste disposal sites from any other contaminants in the Devil's Swamp area, even though other contaminants, such as trichloroethene ("TCE") and tetrachloroethene ("PCE"), are frequently found along with HCB and HCBD at PPI waste disposal sites. If TCE and PCE were found south of Section 45 along with HCB and HCBD, the PPI waste disposal sites could not be ruled out as a suspected source of the contamination. However, if TCE and PCE were found alone, without HCB and HCBD, the source of the contamination could not be attributed to a PPI waste disposal site. According to Drs. Rouhani and Roberts, contaminants in concentrations greater than the "background levels"[5] have not been detected in sediments, surface water, or ground water south of Section 45, nor have they been detected in the north, central, or southern portions of Devil's Swamp.
Based on this evidence, the defendants argue that since the plaintiffs' property is located in the southern portion of Devil's Swamp, three miles south/southeast of Section 45, and since contamination in concentrations greater than the background levels has not been detected south of Section 45, the plaintiffs have failed to present a genuine issue of material fact on this essential element of their claimthe presence of contamination on their property from PPI waste.
In opposition to the motion for summary judgment, the plaintiffs submitted evidence which included the following: affidavits of Dr. Link, dated January 30, 1995 and June 28, 1995; the June 5, 1995 deposition of Dianne Dugas; an affidavit of Dr. Michael C. Axelrod, dated June 29, 1995; an affidavit of Kermit Williams, dated June 29, 1995; and an affidavit of Dr. Paul H. Templet, dated September 25, 2003, with a portion of a 1999 report by Scientific Applications International Corporation ("1999 SAIC report")[6] attached thereto.
*716 According to the plaintiffs' evidence, contamination from the PPI Brooklawn waste disposal site has spread southward of Section 45 and into the five sub-areas of Devil's Swamp; namely, North Bayou Baton Rouge, Distributary Channels, North Devil's Swamp, Devil's Lake, and South Devil's Swamp. According to the 1999 study, a traces of both HCB and HCBDthe "signature" contaminants of PPI wastehave been found in the soil and sediments of all five sub-areas and have also been found in the tissues of fish and shellfish throughout Devil's Swamp. Since the "signature" chemicals have been found in all five sub-areas, including South Devil's Swamp, where the plaintiffs' property is located, contamination from the PPI Brooklawn waste disposal site has migrated south and contaminated the plaintiffs' land. Based on this evidence, the plaintiffs contend that they have presented sufficient factual support as to an essential element of their claim in questionthe presence of contamination on their property from PPI wastesuch that they will be able to satisfy their evidentiary burden at trial, and hence there is a genuine issue of material fact which precludes summary judgment.
In this case, the trial court excluded the expert opinion evidence of Drs. Link and Templet, on which the plaintiffs relied to establish the southward spread of PPI contaminants onto their property, by finding the expert opinions were inadmissible under the standards set forth in Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), as adopted by the Louisiana Supreme Court in State v. Foret, 628 So.2d 1116 (La.1993)[7] and Independent Fire Ins. Co. v. Sunbeam Corp., 99-2181, 99-2257 (La.2/29/00), 755 So.2d 226.[8] Since the plaintiffs assign error to the exclusion of this evidence, we must determine the correctness of this ruling.[9]

*717 Law and Analysis Applicable to Daubert

Under the Louisiana Code of Evidence, a witness qualified as an expert by "knowledge, skill, experience, training, or education" should be allowed to testify if his "scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue." La. C.E. art. 702. See Morgan v. Lafourche Recreation Dist. No. 5, XXXX-XXXX (La.App. 1st Cir. 6/21/02), 822 So.2d 716, 719, writ denied, XXXX-XXXX (La.10/25/02), 827 So.2d 1156. An appellate court should not disturb a trial court's evidentiary ruling on the admissibility of expert opinion evidence at summary judgment absent an abuse of discretion.[10]
In Daubert, the plaintiff offered expert opinion evidence in opposition to a motion for summary judgment, which the lower courts found was not sufficient to overcome the defendants' motion for summary judgment because the expert opinion was based on a scientific technique which was not "generally accepted" as reliable in the relevant scientific community. The United States Supreme Court found that when, "[f]aced with a proffer of expert scientific testimony ... the trial judge must determine at the outset ... whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue." Daubert, 509 U.S. at 592, 113 S.Ct. at 2796. The Supreme Court explained that this would entail "a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." Daubert, 509 U.S. at 592-93, 113 S.Ct. at 2796. The Supreme Court then enumerated factors that the trial court may consider in fulfilling this "gatekeeping role": whether the technique had been subjected to peer review and/or publication; the "known or potential rate of error"; the existence of "standards controlling the technique's operation"; and the technique's "refutability" or testability. See Daubert, 509 U.S. at 593-95, 113 S.Ct. at 2796-97. The Supreme Court further addressed the gatekeeping role in the context of a summary judgment motion and held that "in the event the trial court concludes that the scintilla of evidence presented supporting a position is insufficient to allow a reasonable juror to conclude that the position more likely than not is true, the court remains free ... to grant summary judgment." Daubert, 509 U.S. at 596, 113 S.Ct. *718 at 2798.[11]
It is important to note, however, that there is a crucial difference between questioning the methodology employed by an expert witness and questioning the application of that methodology or the ultimate conclusions derived from that application. Only a question of the validity of the methodology employed brings Daubert into play. Tadlock v. Taylor, XXXX-XXXX (La.App. 4th Cir.9/24/03), 857 So.2d 20, 26, writ denied, XXXX-XXXX (La.3/12/04), 869 So.2d 819. Additionally, Daubert concerns admissibility of the expert's opinion and not his qualification as an expert in the area tendered. Comeaux v. C.F. Bean Corp., 99-0924 (La.App. 4th Cir.12/15/99), 750 So.2d 291, 296 n. 3, writ denied, XXXX-XXXX (La.3/17/00), 756 So.2d 1145.
With regard to the contention by the defendants' that Dr. Link did not possess the qualifications, knowledge, and expertise to render the opinions and conclusions that he did, our review of the record reveals that Dr. Link has a B.S. degree in geology from the University of Wisconsin and a Ph.D. degree in geology from Northwestern University in Evanston, Illinois. He is a project geologist and project manager at Exploration Technologies, Inc., and his primary areas of expertise are in elastic sedimentation and geological evaluations of environmental assessments. Because the "signature" chemicals at issue, HCB and HCBD, attach to soil particles and move with the soil particles, his specialized scientific knowledge of sedimentology and geology may aid the fact finder in understanding how PPI contamination may have spread throughout Devil's Swamp and may have found its way onto the plaintiffs' property. Thus, his knowledge, skill, experience, training, and education provide him with appropriate qualifications to render an expert opinion on whether PPI contamination found in the northern Devil's Swamp area migrated into the southern Devil's Swamp area and onto the plaintiffs' property.
According to the evidence, from December 10 to 13, 1994, Dr. Link came to Baton Rouge, Louisiana to "reconnoiter" the area of Devil's Swamp, and he personally obtained soil and water samples from Sections 8, 16, and 17 of Devil's Swamp, which are south of the area studied by PRC Environmental Management Inc. on behalf of the EPA. He then personally transported the samples to a laboratory in Houston, Texas, where they were analyzed. Based on his review of the analytical data, as well as other data from a 1992-93 study done by PRC and Dr. Rouhani's affidavit, and with full knowledge of how "depositional and erosional systems function," he concluded that contaminants derived from PPI sites have been transported, and that as a result of "contaminant transportation and deposition," Sections 45, 32, 47, 5, 55, 8, 9, 16, and 17[12] are contaminated.
In the defendants' motion for summary judgment, they argued that Dr. Link's opinion should be excluded under Daubert because he was in error as to the source of the contamination that he observed in his soil samples from areas south of Section 45, and because his opinion is "unscientific" and/or "scientifically unreliable." In support of the exclusion of Dr. Link's opinion, *719 the opinions of Drs. Rouhani and Roberts were offered.
In excluding Dr. Link's expert opinion, the trial court found: (1) Dr. Link's opinion lacked the scientific reliability and methodology required by Daubert; (2) Dr. Link did not perform adequate testing to determine the source of the chemicals he found on the plaintiffs' property; and (3) Dr. Link did not follow "standard procedures" for assessing the true origin of the chemicals. These findings by the trial court were seemingly influenced by the opinions of Dr. Rouhani and Dr. Roberts, the defendants' experts.
According to Dr. Rouhani, Dr. Link does not possess the expertise to conduct an unsupervised environmental investigation on the fate of contaminants in aquatic environments. He further stated that Dr. Link's investigation was marked by serious shortcomings and erroneous interpretations (such as improper planning, improper sampling procedure, disorganized data handling procedures, flawed assessments due to lack of hydrologic and hydraulic knowledge, and fundamental deficiencies in his model). Therefore, Dr. Rouhani opined that Dr. Link's conclusions as to the source of the contamination were speculative and unsubstantiated. Additionally, according to Dr. Roberts, Dr. Link is in error as to the source of the contamination on the plaintiffs' property, and neither Dr. Link's work nor the material reviewed by Dr. Link supports his conclusion. Dr. Roberts further stated that Dr. Link's reasoning is unscientific and reveals a lack of basic chemical knowledge, because he fails to make a connection between contamination from a PPI waste site and the contamination detected in his soil samples.
Although Dr. Templet's qualifications as an expert were never specifically challenged by the defendants' experts, the record reflects that Dr. Templet is the former Secretary of the Louisiana Department of Environmental Quality, has a Ph.D. degree with advanced degrees in physical chemistry and chemical physics, and particular expertise in environmental chemistry and environmental planning and management. He teaches environmental planning and management at Louisiana State University, Department of Environmental Studies. He has worked in the chemical industry for four years and has qualified as an expert in both state and federal courts in the areas of chemistry, environmental chemistry, including "fate and effects,"[13] and environmental planning and management.
The expert opinion evidence of Dr. Templet concludes that the plaintiffs' property is contaminated with chemicals from the Brooklawn site and that the contamination may further spread from the upstream areas to the plaintiffs' property in the future. His opinion was based, in part, on the 1999 SAIC report, part of which was attached to his affidavit, and which found HCB and HCBD (the "signature" chemicals of PPI contamination) in the sediment and soil in South Devil's Swamp and in the tissue of fish and shellfish in the entire Devil's Swamp watershed.
In the defendants' motion for summary judgment, they argued that the plaintiffs' expert opinion evidence of Dr. Templet should be excluded under Daubert because he did not perform the required testing to determine the origin of the specific chemicals, because the entire 1999 SAIC report was not attached to his affidavit, and because *720 there was insufficient information in the 1999 SAIC report on which to base his conclusions. In excluding Dr. Templet's expert opinion, the trial court found, that "Dr. Templet, like Dr. Link" failed to perform the required testing to determine the origin of the specific chemicals and did not take into consideration other possible sources of the chemicals.
The trial court's conclusion that the expert opinions of Drs. Link and Templet did not meet the standards set forth in Daubert was based on the defendants' contention that the methodology employed by the plaintiffs' experts lacked the required testing which would determine the origin of the chemicals found on the plaintiffs' property. However, it was not necessary to perform additional testing to determine the origin of the chemicals, because the evidence sufficiently established genuine issues of material fact (1) that the origin of the chemicals HCB and HCBD are not in disputethey are the "signature" chemicals of PPI waste, and (2) that the signature chemicals have been found on the plaintiffs' property. Thus, it is immaterial whether Drs. Link and Templet performed their own testing to determine the origin of the chemicals.
With regard to the defendants' contention that Dr. Templet's opinion should be excluded because he relied on the 1999 SAIC report and because there was insufficient information in the 1999 SAIC report on which to base his conclusions, we conclude that it was not improper for Dr. Templet to rely on the 1999 SAIC report. An expert may provide testimony based on information obtained from others and the character of the evidence upon which the expert bases an opinion affects only the weight to be afforded the expert's conclusion. State v. Pooler, 96-1794 (La.App. 1st Cir.5/9/97), 696 So.2d 22, 55, writ denied, 97-1470 (La.11/14/97), 703 So.2d 1288. While Dr. Roberts contends that Dr. Templet did not attach two appendices that went with the 1999 SAIC report, as well as two other attachments to the report, and therefore, there was insufficient information in the 1999 SAIC report on which to base conclusions reached by Dr. Templet, we note that the 1999 SAIC report was not being submitted as evidence, but rather, was identified as one of several sources of information on which Dr. Templet relied in reaching his opinion. We further note that Dr. Templet's affidavit states that he reviewed the 1999 SAIC report. To the extent that he may not have reviewed all of the 1999 SAIC report, this factor affects only the weight to be afforded his conclusion (see Pooler, 696 So.2d at 55) and may serve as a basis for attack by defendants on cross-examination at trial, but it does not make his opinion evidence inadmissible under Daubert. See Fussell v. Roadrunner Towing and Recovery, Inc., 99-0194 (La.App. 1st Cir.3/31/00), 765 So.2d 373, 377, writ denied, XXXX-XXXX (La.6/23/00), 765 So.2d 1042.
Accordingly, we find that the expert opinion evidence of Drs. Link and Templet was admissible and that the trial court abused its discretion in ruling otherwise.

Propriety of Summary Judgment in this Case
In determining whether summary judgment is appropriate, appellate courts review evidence de novo under the same criteria that govern the trial court's determination of whether summary judgment is appropriate. Independent Fire Ins. Co., 755 So.2d at 230; Allen v. State ex rel. Ernest N. Morial New Orleans Exhibition Hall Authority, XXXX-XXXX (La.4/9/03), 842 So.2d 373, 377. At the summary judgment stage, a court should remain cognizant that: (1) the trial court cannot make credibility determinations on *721 a motion for summary judgment; (2) the court must not attempt to evaluate the persuasiveness of competing scientific studies, and in performing its gatekeeping analysis, the court must "focus solely on the principles and methodology, not on the conclusions they generate"; (3) the court "must draw those inferences from the undisputed facts which are most favorable to the party opposing the motion," and (4) because summary judgments deprive the litigants of the opportunity to present their evidence to a jury, they should be granted only when the evidence presented at the motion for summary judgment, including admissible expert opinion evidence, establishes that there is no genuine issue of material fact in dispute. Independent Fire Ins. Co., 755 So.2d at 236. Thus, if a party submits expert opinion evidence in opposition to a motion for summary judgment that would be admissible under Daubert (and the other applicable evidentiary rules), and is sufficient to allow a reasonable juror to conclude that the expert's opinion on a material fact more likely than not is true, the trial court should deny the motion and let the issue be decided at trial. Id.
When the expert opinion evidence improperly excluded by the trial court in this case is considered, it is clear that the experts have differing views as to the existence of PPI contamination on the plaintiffs' property. Accordingly, the evidence submitted by plaintiffs creates genuine issues of material fact precluding summary judgment regarding the defendants' liability. See Hanover American Ins. Co., 843 So.2d at 576.
Furthermore, the defendants failed to shift the burden of proof to the plaintiffs under La. C.C.P. art. 966, and themselves created a genuine issue of material fact by submitting contradictory evidence regarding whether HCB and HCBD are the "signature" chemicals of PPI contamination. While the October 28, 1994 affidavit of Dr. Rouhani and the April 28, 1995 affidavit of Dr. Roberts state that contamination from a PPI waste disposal site is distinguished by the presence of HCB and HCBD, the "signature" contaminants for PPI waste, in the most recent expert opinion affidavit by Dr. Roberts, executed on October 1, 2003, the defendants now contend that HCB and HCBD are no longer the only "signature" chemicals of PPI contamination and that the presence of HCB and/or HCBD in sediment or biota does not lead to a scientific inference that the HCB and/or HCBD came from a PPI waste disposal site.[14]
Additionally, and concerning the nuisance claim, regardless of the presence of actual PPI contamination on the plaintiffs' property, we note the fact that the existing health advisory affects the plaintiffs' ability to use and enjoy their property. According to the health advisory, no one should swim or participate in water sports, and consumption of fish and shellfish from the area is to be limited. So, due to the defendants' conduct at the PPI waste disposal sites, the plaintiffs may prove damages caused by the defendants by the mere fact that the health advisory is in existence, regardless of the presence of actual PPI contamination on the property.
Regarding damages, the plaintiffs submitted the affidavit of Kermit Williams, a state certified real estate appraiser.[15] According to his affidavit, Kermit Williams has had experience in evaluating property and appraising wetlands in several parishes *722 in Louisiana, including East Baton Rouge Parish. Additionally, he stated that he is familiar with the area in East Baton Rouge Parish known as Devil's Swamp; he is familiar with the July 9, 1993 health advisory issued by the DHH and DEQ for the Devil's Swamp and Bayou Baton Rouge areas; he is familiar with certain newspaper articles that appeared in The Advocate, Baton Rouge's local newspaper, on June 11 and 12, 1993, concerning fish and crawfish contamination resulting from hazardous waste in Devil's Swamp; and he is aware of the existence of toxic waste dumps at the Brooklawn and Scenic Highway sites that have been designated as hazardous sites on the Superfund National Priorities List by EPA. He opined that, as a result of the health advisory, newspaper articles, and proximity upstream of two toxic waste sites, the value of property in the area known as Devil's Swamp has been adversely affected. Based on this evidence, the plaintiffs' have shown that there are genuine issues of material fact as to whether the value of their property has been diminished as a result of the health advisory.

Conclusion
We find that the expert opinion evidence submitted by the plaintiffs in opposition to the defendants' motion for summary judgment should have been considered by the trial court. Our de novo review of that evidence reveals that it raises genuine issues of material fact, and we conclude that the motion for summary judgment should have been denied.[16] Accordingly, the ruling of the trial court excluding the expert opinion evidence of Drs. David A. Link and Paul H. Templet is hereby reversed, the judgment granting the defendants' motion for summary judgment is hereby reversed, and this case is remanded to the trial court for further proceedings.
All costs of this appeal are assessed to the defendants/appellees.
REVERSED AND REMANDED.
DOWNING, J., concurs.
PARRO, J., dissents and will assign reasons.
KUHN, J., concurs and will assign reasons.
NOTES
[1] See Ewell v. Petro Processors of Louisiana, Inc., 364 So.2d 604 (La.App. 1st Cir.1978), writ denied, 366 So.2d 575 (La.1979), wherein the owners of the contaminated property immediately north of PPI's property brought suit against PPI for its negligence in permitting toxic waste materials to leak onto their property.
[2] In 1980, the United States Department of Justice, on behalf of the United States Environmental Protection Agency ("EPA"), sued PPI and several of the industrial generators in federal district court under the Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA), 42 U.S.C. § 9601, et seq. In February 1984, a consent decree was entered in which certain companies, including the corporate defendants in the present action, agreed to investigate and clean up contamination from the former PPI facilities. The consent decree further provided that these sites would be monitored for thirty years after the completion of remediation under the continuing supervision and jurisdiction of the federal court. The corporate defendants contracted with NPC to perform the remediation work.
[3] On January 16, 1996, the DHH and the Agency for Toxic Substance and Disease Registry issued a public health assessment concerning the health threat posed by toxic contamination migrating from the PPI waste disposal sites into the Devil's Swamp watershed. This public health assessment described the scope of the previous health advisory, in that it was "not just for fishing." Rather, it was recommended that there be "no swimming nor other water or sediment contact in the contaminated area." The plaintiffs' property is in this area of concern.
[4] We note that in Dr. Roberts' April 28, 1995 affidavit, he states, "Contamination at the PPI sites is distinguished by HCB and HCBD; i.e., these are signature chemicals for PPI contamination." However, in Dr. Roberts' October 1, 2003 affidavit, he states that "[t]o restrict the so-called `signature contaminants' [of PPI waste] to HCB and HCBD is a gross simplification," as they are not the only chemicals found in PPI waste.
[5] "Background levels" means the levels of compounds in areas unaffected by PPI waste.
[6] This 1999 SAIC report was prepared pursuant to an EPA contract to study the extent of toxic contamination of the Devil's Swamp watershed and was entitled "Human Health Risk Assessment Devil's Swamp, Baton Rouge, Louisiana." The study divided the Devil's Swamp watershed into five different sub-areas: North Bayou Baton Rouge, Distributary Channels, North Devil's Swamp, Devil's Lake, and South Devil's Swamp.
[7] In Foret, the Louisiana Supreme Court adopted the Daubert standards as those to be utilized by Louisiana Courts when considering whether expert opinion testimony will be admissible at trial. Foret, 628 So.2d at 1122-23.
[8] In Independent Fire Ins. Co., the Louisiana Supreme Court adopted the Daubert standards to be utilized when considering whether expert opinion evidence will be admissible at summary judgment. Independent Fire Ins. Co., 755 So.2d at 235-36.
[9] The record before us is silent as to whether the trial court held an evidentiary hearing on the issue of whether the opinions of the plaintiffs' experts should be excluded from evidence under Daubert (or a "Daubert hearing"). In Foret, the Louisiana Supreme Court noted that "[i]n the absence of such a hearing, only a scientific method's proven `inherent reliability' will allow a court to take judicial notice of the accuracy of scientific testimony and evade the requirement for an evidentiary hearing on the reliability of such testimony." Foret, 628 So.2d at 1124 n. 8. However, in Independent Fire Ins. Co., the Louisiana Supreme Court stated that at the summary judgment stage, the admissibility of an expert opinion affidavit is "subject to challenge... by way of a Daubert hearing, a motion to strike, or counter affidavits." (Footnote omitted). Independent Fire Ins. Co., 755 So.2d at 235. In this case, the defendants chose to challenge the admissibility of the plaintiffs' experts in their motion for summary judgment and by submitting counter affidavits (as opposed to filing a motion to strikesee Independent Fire Ins. Co., 755 So.2d at 235 n. 4). Specifically, the defendants challenged the admissibility of Dr. Link's expert opinion by submitting the counter affidavits of Drs. Rouhani and Roberts, and they challenged the admissibility of Dr. Templet's expert opinion by submitting the counter affidavit of Dr. Roberts. Accordingly, and since there was no evidentiary hearing on the issue, when determining the admissibility of the opinions of the plaintiffs' experts under Daubert, the trial court was bound by the rules governing summary judgment, such as the inappropriateness of weighing opinion testimony or of evaluating the credibility of experts. See Independent Fire Ins. Co., 755 So.2d at 235.
[10] See General Electric Co. v. Joiner, 522 U.S. 136, 143, 118 S.Ct. 512, 517, 139 L.Ed.2d 508 (1997), which held that a federal district court's decision to admit or exclude scientific expert opinion evidence under Daubert at summary judgment is reviewable under "the abuse-of-discretion standard." While we acknowledge that General Electric sets forth the controlling standard of review for federal appellate cases (and has not yet been adopted by Louisiana as the controlling standard of review for Louisiana appellate cases), we note that the appropriate standard of review as to the admissibility of expert opinion evidence at the summary judgment stage was not addressed by the Louisiana Supreme Court in Independent Fire Ins. Co., and therefore we find General Electric persuasive authority with regard to that issue. Since it is well-established in Louisiana jurisprudence that a trial court's determination as to the admission of expert testimony at trial will not be disturbed on appeal absent an abuse of discretion, Southern Casing of Louisiana, Inc. v. Houma Avionics, Inc., XXXX-XXXX (La.App. 1st Cir.9/28/01), 809 So.2d 1040, 1055, it follows that we would review a trial court's decision to admit or exclude expert opinion evidence at summary judgment under the same abuse of discretion standard set forth by General Electric.
[11] In Kumho Tire Co. v. Carmichael, 526 U.S. 137, 141, 119 S.Ct. 1167, 1171, 143 L.Ed.2d 238 (1999), the United States Supreme Court held that the Daubert standard governing the admissibility of expert evidence applied not only to testimony based on "scientific" knowledge, but also to testimony based on "technical" and "other specialized" knowledge.
[12] These sections are all south of the Brooklawn site and, with the exception of Section 45, are all south of Section 45.
[13] According to Dr. Rouhani's April 26, 1995 affidavit, a "thorough knowledge about the fate and transport of contaminants in aquatic environments" (or "fate and effects") is necessary for one to make an investigation of distribution of contaminants in the Devil's Swamp area.
[14] See also footnote 4.
[15] The admissibility of this expert opinion evidence has not been challenged by the defendants.
[16] We note that in their final assignment of error, the appellants raised the issue of the admissibility of the defendants' experts under Daubert. However, as we have already found that genuine issues of material fact exist that preclude summary judgment and warrant a reversal of the trial court's judgment, we pretermit discussion of this issue.