THIBODEAUX, Chief Judge,
dissenting.
| [This is a fairly straightforward manifest-error case. The majority focuses on factual circumstances which, though interesting, are determinatively irrelevant. The justification for expropriation “is derived primarily from the testimony of the witnesses,” according to the majority. That is true. The trial court chose to place more weight on the testimony of the City-Parish’s experts. An appellate court should defer to that finding. While the majority concludes that the City-Parish did not produce “objective” evidence of the public need for expropriation, the record belies that assertion.
The City-Parish requires approximately 10,596 square feet for the road right-of-way and 6,633 square feet for a public facility servitude to construct the two-lane roadway along the 424 foot eastern boundary of the Persons’ property. Tom Carroll, the City-Parish’s Director of Public Works, worked for the engineering firm that created the Settlement subdivision layout. He testified that when the Settlement was dedicated in 1979, the dedication included a “stub-out” and right-of-way on Homestead Way. The extension sought by the expropriation connects Settlers Trace through the Persons’ property to the Homestead Way stub-|out,¾ which intersects with Old Settlement. This extension would allow access to the light at Ambassador Caffery, a street which intersects with Settlers Trace.
Since the early to mid-1990s, significant growth has occurred in the area surrounding the Settlement subdivision. The Settlement was originally created with only two access points, both of which only allow for ingress and egress on Kaliste Saloom, which is a two-way road with a speed limit of forty miles per hour. Betty Meyers, President of The Settlement Residents’ Association (TSRA) and Mr. Carroll, a licensed Civil Engineer,[1] testified that the primary concern of the Settlement residents was the difficulty and/or length of *16 time it takes to make left turns out of the subdivision. The issue with the traffic at Old Settlement and Kaliste Saloom is compounded by the fact that the TSRA employs an off-duty police officer to stop traffic on Kaliste Saloom and allow the Settlement residents to make left turns out of the subdivision during peak traffic times.
Mr. Carroll testified that from 2003 to 2007, significant development has occurred in the area around the subdivision. Specifically, the following developments have been built within a half-mile radius of the proposed Settlers Trace Extension project: the new Lourdes hospital, the extension of Ambassador Caffery to Highway 90, and the Academy, Kohls, and Super Target stores. Mr. Tramel testified that the last traffic volume report from his department indicated that approximately 25,000-30,000 vehicles travel on Kaliste Saloom each day. Mr. Tramel stated that in his opinion, a road is congested when 10,000-15,000 cars per day travel on a two-lane road. Based on the surrounding growth and the ^problems associated with having only two access points for ingress and egress, the TSRA passed a resolution stating their desire to connect Settlers Trace to the Homestead Way stub-out.
Following the TSRA’s resolution, the City-Parish proposed Ordinance No. O-249-2007 to the Lafayette City Council. The Council unanimously approved the Ordinance and declared the construction of the Settlers Trace Extension Project a public necessity. On November 8, 2007, the Lafayette City-Parish President signed the Ordinance.
Thereafter, the City-Parish began actively pursuing the acquisition of the necessary rights-of-way and public facility servitudes from four different property owners to begin construction on the extension project. It purchased the required rights-of-way and servitudes from the three other affected property owners, but the City-Parish and the Persons were unable to reach an agreement on the issue of the taking.
Standard of Review
A trial court’s factual determinations as to necessity or expediency of an expropriation will not be reversed on appeal in the absence of manifest error. State, Dep’t of Transp. & Dev. v. Estate of Griffin, 95-1464 (La.App. 1 Cir. 2/23/96), 669 So.2d 566; Calcasieu-Cameron Hosp. Serv. Dist. v. Fontenot, 628 So.2d 75 (La.App. 3 Cir.1993), writ denied, 94-168 (La.3/18/94), 634 So.2d 854. When the expropriating authority has met its burden of proof in an expropriation action that requires the trial court to make a factual determination, the Court of Appeal will not disturb the trial court’s ruling absent manifest or clear error. Town of Broussard v. Ducrest, 98-838 (La.App. 3 Cir. 12/9/98), 722 So.2d 1174.
11Analysis of Louisiana Law on Expropriation
The Persons contend that the Settlers Trace extension is not a public necessity and that the City-Parish’s decision to create the extension was arbitrary, capricious, and unnecessary.
The right to acquire, own, and enjoy private property is a well-settled right in Louisiana. This right, however, is not without limits. Indeed, this right is subject to the right of expropriation, when required by public interest and necessity. Town of Broussard, 722 So.2d 1174. The authority of a municipality to expropriate property is outlined in La. Const. Art. 1, § 4 and La.R.S. 19:102. Specifically, La. Const. Art. 1, § 4 states in pertinent part:
(A) Every person has the right to acquire, own, control, use, enjoy, protect, and dispose of private property. This *17 right is subject to reasonable statutory restrictions and the reasonable exercise of the police power.
(B)(1) Property shall not be taken or damaged by the state or its political subdivisions except for public purposes and with just compensation paid to the owner or into court for his benefit.
“Once a municipality has decided that the expropriation of a landowner’s property is necessary for the public interest, a court may not set aside such a determination absent finding that the decision was unreasonable or arbitrary.” Town of Broussard, 722 So.2d at 1176 (citations omitted). To determine the necessity of the taking, the municipality must evaluate the location and extent of the taking. Id. Once the expropriating authority has met its burden of proving that the taking is a public necessity, the burden shifts to the landowner to show that the expropriating authority has abused its discretion in selecting its location. Id.
|s“The expropriating authority abuses its discretion when it acts in bad faith, without adequate determining principles, or without reason.” Id. Criteria to be considered by the expropriating authority in deciding whether to expropriate include: “[Ajvailability of an alternate route, costs, environmental factors, long-range area planning, and safety considerations.” Red River Waterway Com’n v. Fredericks, 566 So.2d 79, 83 (La.1990).

Public Necessity

In arguing that the City-Parish failed to demonstrate a public need for the extension project, the Persons assert that the City-Parish did not undertake any studies to determine the necessity of the extension. The Persons further contend that their expert, Doug Wiersig, did not find evidence that the City-Parish utilized information that quantified the public necessity for the extension.
By arguing that the City-Parish’s experts did not undertake any studies to support its decision to expropriate, the Persons, in effect, challenge the methodology employed by the City-Parish’s experts. Questions regarding the validity of the methodology employed by an expert bring into play the analysis of Daubert v. Merrell Dow Pharm., 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). MSOF Corp. v. Exxon Corp., 04-988 (La.App. 1 Cir. 12/22/05), 934 So.2d 708, writ denied, 06-1669 (La.10/6/06), 938 So.2d 78. Here, however, the Persons never made a Daubert challenge to the methodology of the two experts offered by the City-Parish. Thus, once admitted as experts, the trial court’s evaluation of the experts’ testimony is subject to the manifest error standard of review, “unless the stated reasons of the expert are patently unsound.” Zimko v. American Cyanamid, 03-658, p. 29 (La.App. 4 Cir. 6/8/05), 905 So.2d 465, 486, writ denied, 05-2102 (La.3/17/06), 925 So.2d 538. Here, these opinions were solidly grounded in data and experience.
Mr. Carroll and Mr. Tramel were accepted by the trial court as experts, without objection. Mr. Carroll received a degree in civil engineering, is a licensed professional engineer, a licensed land surveyor, and has been employed with the City-Parish since 1991. Mr. Tramel also holds an undergraduate engineering degree and received a Masters of Science in Engineering and a Masters of City Planning. Mr. Tramel is a registered engineer in Louisiana, Texas, Florida, and Oklahoma.
Both Mr. Carroll and Mr. Tramel testified that as civil engineers and, as Directors at the City-Parish, they recommended to the Council that it find that the extension project was a public necessity. Mr. Carroll and Mr. Tramel testified that *18 the public purpose served in Ordinance No. 249-2007 was to provide for improved traffic flow and public safety. Specifically, Mr. Carroll testified that the proposed extension would provide: (1) the opportunity to access Settlers Trace; (2) an additional means of ingress/egress; (3) more flexibility of emergency personnel services; and, (4) residents the option of using a signalized intersection at Ambassador Caffery. Similarly, Mr. Tramel stated the reasons for the proposal were: (1) to provide better interconnectivity and traffic flow in and out of the Settlement; (2) to enhance the ability for public safety personnel to enter the subdivision; (3) to address additional public safety issues; (4) to increase traffic safety; and, (5) to provide the Settlement residents with access to a signalized intersection.
Though the City-Parish did not conduct any independent “studies” assessing the public necessity of the project, Mr. Carroll and Mr. Tramel based 17their opinions that the project is a public necessity on an analysis of traffic data, an evaluation of the growth of the surrounding area, and their own experiences and expertise. It is well-settled that an expert may provide testimony based upon a variety of sources, including information obtained from others, and “the character of the evidence upon which the expert bases an opinion affects only the weight to be afforded the expert’s conclusion.” MSOF Corp., 934 So.2d at 720.
Specifically, Mr. Carroll testified that he applied his thirty-seven years of experience, expertise, and engineering knowledge to consider the facts in making an informed decision about whether the project was necessary. Additionally, Mr. Carroll used the information he possessed, as well as the information received from Mr. Tramel through the Department of Traffic and Transportation, in forming the basis of his recommendation that the project was a public necessity. Mr. Tramel testified that he possessed data based on engineering observations, traffic data, traffic volume counts, traffic turning counts, accident reports, and crash reports. His department utilized that data in its decision-making process. Mr. Tramel’s extensive file on this matter included over 600 pages of documents. Mr. Tramel testified that he used this information, as well as his thirty-nine years of experience and personal observations of the traffic congestion in the area, to formulate and provide his recommendation to the Council that the Settlers Trace Extension project was a public necessity.
In rebuttal, the Persons offered the testimony of Doug Wiersig, Ph.D. The court accepted Dr. Wiersig as an expert in civil engineering with special knowledge of transportation, planning, traffic operations, traffic safety, roadway design and planning for municipalities, including expropriating private property for public purposes. Somewhat ironically, the majority cites a lack of “objective” ^evidence of public need, yet fails to point out any “studies” done by Dr. Wiersig or his use of any “objective” evidence. He simply reviewed and critiqued the methodology of Mr. Tra-mel and Mr. Carroll.
Dr. Wiersig testified that in his opinion, the City-Parish provided no documentation of a quantified defined need for the extension. In describing the analysis undertaken to determine public necessity for expropriation of private property, Dr. Wiersig testified that a need must be defined. Dr. Wiersig testified that in the planning process of such a project, an analysis is undertaken to define the needs and to bring forward options and solutions. Dr. Wiersig reviewed the documentation that existed to justify the need for the extension including traffic counts, accident *19 reports, pictures, design drawings, all memorandums introduced at trial, deposition testimony, plans and activities associated with the transportation planning activities in the Lafayette area, and the 2030 Transportation Plan. Dr. Wiersig testified that although reasons for the extension were offered for the expropriation, the City-Parish’s witnesses did not provide any further information that quantified the need for the project.
The trial court considered the testimony of the three experts and determined that the City-Parish proved by a preponderance of the evidence that a public need exists for the proposed extension. That determination was sound and reasonably based on the entire record of testimony and exhibits. It should not be disturbed because a different outcome is desired.

Allegations that the City-Parish Acted Arbitrarily and Capriciously

Given the trial court’s determination of public need, the Persons also challenge the trial court’s judgment that no evidence existed that the City-Parish |flabused its discretion or was arbitrary and capricious in choosing the location and extent of the property expropriated.
Ample evidence suggests that the City-Parish thoroughly considered the appropriate factors in determining the extent and location of the property to be expropriated, including: the “availability of an alternate route, costs, environmental factors, long-range area planning, and safety considerations.” Red River Waterway Com’n, 566 So.2d at 83.
Indeed, the trial court acted reasonably and in good faith in determining the necessary extent and location of the property subject to the taking.[2] Mr. Carroll, acting in his capacity as a land surveyor, prepared the property plat showing the area to be acquired from the Persons. The plat illustrates that the proposed Road Right of Way will require a total of 10,596 square feet of land area, of which approximately 2,010 square feet is within an existing permanent utility servitude. The Permanent Public Facility Servitude to be acquired will require an approximate 6,633 square feet of land area, of which approximately 3,842 square feet is within an existing permanent utility servitude. Mr. Carroll’s survey indicates that the City-Parish will leave a total of 116,407 square feet of the Persons’ property untouched.
Before making any recommendations to the Council, the City-Parish thoroughly discussed and analyzed all possible alternatives to the extension of Settlers Trace into Homestead Way. The City-Parish thoroughly considered at least five separate alternatives, including: (1) traffic signalization at Old Settlement and Kaliste Saloom; (2) alternative point of ingress/egress out of the 1 ^Settlement approximately 200 to 300 feet from Kaliste Saloom; (3) realignment of Kensington Road with Old Settlement Road; (4) construction of three lanes of roadway on Kaliste Saloom from Old Settlement to North Meyers; and, (5) widening of Kal-iste Saloom to four or five lanes from Ambassador Caffery to Highway 733. The record more than adequately supports the City-Parish’s ultimate conclusion that none of these proposed alternatives were viable solutions and that the best solution *20 was the proposed extension of Settlers Trace.
The City-Parish considered the long range planning, environmental considerations, and safety considerations of the site by examining the traffic patterns, traffic collisions, and projected growth around the proposed extension. Specifically, the City-Parish analyzed all traffic crashes on Ambassador Caffery to East Broussard Road from 2002 through 2007. It also considered the fact that due to the expansive growth of the area and high traffic volume, a private security officer is currently employed to direct residents out of the Settlement, inhibiting traffic flow on Kaliste Saloom. The City-Parish also considered the ability of emergency personnel to access the area. All of these factors supported the City-Parish’s decision that the extension was a public necessity and that the Settlers Trace route was the best solution.
For the foregoing reasons, I dissent and would affirm the judgment of the trial court.

. The City-Parish offered the testimony of two experts at trial. Tom Carroll, the City-Parish's Director of Public Works, was accepted as an expert in civil engineering. Tom Tra-mel, the City-Parish’s Director of Traffic and Transportation, was accepted as an expert in civil engineering with a specialty in traffic and transportation.

. As the trial court aptly observed, the proposed extension had been considered for years. Though the City-Parish had, at one time, abandoned its right-of-way on Homestead Way, at the time the Persons purchased their property, they were aware that an extension into the Settlement was contemplated. Indeed, the plat under which the Persons acquired their property made reference to the future extension of Homestead Way to Farrel Road through their land.