958 So.2d 676 (2007)
Godfrey J. and Lydia BERGERON
v.
ARGONAUT GREAT CENTRAL INSURANCE COMPANY, et al.
No. 2006 CA 0813.
Court of Appeal of Louisiana, First Circuit.
February 9, 2007.
Writ Denied March 23, 2007.
*677 John O. Charrier, Jr., G. Bruce Kuehne, Baton Rouge, LA, for Plaintiffs-Appellees, Godfrey J. and Lydia Bergeron.
Eric J. Halverson, Jr., Metairie, LA, for Defendants-Appellants, Frank Billeaudeau, Elsa Billeaudeau, d/b/a Jazz Seafood & Steakhouse, and Argonaut Great Central Ins. Co.
Craig R. Nelson, New Orleans, LA, for Defendant-Appellee, La. Dept. of Health and Hospitals.
Before: KUHN, GAIDRY, and WELCH, JJ.
WELCE, J.
This is an appeal by Frank Billeaudeau and Elsa Billeaudeau, d/b/a Jazz Seafood & Steakhouse and Argonaut Great Central Insurance Company (collectively referred to as "Jazz") from a summary judgment dismissing, with prejudice, the State of Louisiana, Department of Health and Hospitals ("DHH") from the plaintiffs' action for damages arising out of the consumption of raw oysters. We affirm.

I. FACTUAL AND PROCEDURAL HISTORY
On July 23, 2001, Godfrey Bergeron ate approximately one dozen raw oysters in the oyster bar at the Jazz Seafood & Steakhouse in Kenner, Louisiana. Approximately two to three days later, Mr. Bergeron became very ill and was admitted to the Medical Center of Southwest Louisiana. Mr. Bergeron was diagnosed with a vibrio vulnificus infection, a flesh-eating bacterial infection, which he contracted from ingesting raw oysters that contained the vibrio vulnificus bacteria.[1] As a result of the vibrio vulnificus infection, Mr. Bergeron required an extensive hospital stay, incurred significant medical expenses, and sustained permanent damage to his nerves and skin.
On June 19, 2003, Mr. Bergeron and his wife instituted this action for damages against Jazz and DHH. Specifically with regard to Jazz, the plaintiffs alleged that Jazz was obliged by the Louisiana sanitary code to, but did not, post a warning to susceptible persons of the dangers of eating raw oysters, and alternatively, that any warning which it posted was inadequate and was hidden or so inconspicuous that it was inadequate. With regard to DHH, the plaintiffs alleged that DHH had an affirmative duty to cause restaurants, such as Jazz Seafood & Steakhouse, to post warnings about the dangers of eating raw oysters and that DHH failed to perform duty.
The DHH moved for summary judgment alleging that it could not be held liable to the plaintiffs for any damages suffered as a result of eating raw oysters because it had complied with its obligation to enforce the sanitary code with regard to Jazz Seafood & Steakhouse, and therefore, DHH sought dismissal from these proceedings. Jazz filed an opposition to the motion for summary judgment on the basis that the dismissal of DHH from the plaintiffs' *678 lawsuit would deprive it of a comparative offset for any fault attributable to DHH with regard to the presence and adequacy of the warnings.[2] On December 22, 2004, the trial court signed a "final judgment" granting DHH's motion for summary judgment and dismissing the plaintiffs' claims against it with prejudice, and on March 14, 2005, the trial court signed a judgment denying Jazz's motion for new trial. It is from these two judgments that Jazz has appealed.[3]

II. SUMMARY JUDGMENT LAW
In determining whether summary judgment is appropriate, appellate courts review evidence de novo under the same criteria that govern the trial court's determination of whether summary judgment is appropriate. MSOF Corp. v. Exxon Corp., XXXX-XXXX, p. 17 (La.App. 1st Cir. 12/22/05), 934 So.2d 708, 720, writ denied, XXXX-XXXX (La.10/6/06), 938 So.2d 78. A motion for summary judgment should be granted only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue as to material fact and that mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(B). On a motion for summary judgment, the burden of proof is on the mover. If, however, the mover will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the mover's burden on the motion does not require that all essential elements of the adverse party's claim, action, or defense be negated. Instead, the mover need only point out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. Thereafter, the adverse party must produce factual evidence sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial. If the adverse party fails to meet this burden, there is no genuine issue of material fact, and the mover is entitled to summary judgment. La. C.C.P. art. 966(C)(2); MSOF, XXXX-XXXX at pp. 6-7, 934 So.2d at 714.

III. LAW AND DISCUSSION
In this case, the plaintiffs' petition for damages is against both Jazz and DHH and is based on negligence. In Louisiana, a defendant's liability for its negligence is determined by using the traditional duty-risk tort analysis, which requires the plaintiff to prove five essential elements: (1) duty (proof that the defendant had a duty *679 to conform his conduct to a specific standard); (2) breach of duty (proof that the defendant's conduct failed to conform to the appropriate standard); (3) cause-in-fact (proof that the defendant's substandard conduct was a cause-in-fact of the plaintiffs injuries); (4) scope of liability or scope of protection (proof that the defendant's substandard conduct was a legal cause of the plaintiffs injuries); and (5) damages (proof of actual damages). Perkins v. Entergy Corp., XXXX-XXXX, p. 7 (La.3/23/01), 782 So.2d 606, 611. Moreover, "[i]n any action for damages where a person suffers injury, death, or loss, the degree or percentage of fault of all persons causing or contributing to the injury, death, or loss shall be determined. . . ." La. C.C. art. 2323.
In 1991, due to the growing number of cases of vibrio vulnificus infections arising from the consumption of raw oysters, the DHH published a rule in the sanitary code requiring all restaurants that sell or serve raw oysters to provide clearly visible warnings about the consumption of raw shellfish at the point of sale. See Gregor v. Argenot Great Central Ins. Co., XXXX-XXXX, pp. 1-2 (La.5/20/03), 851 So.2d 959, 961. This rule is presently set forth in La. Admin. Code 51:XXIII.1109[4] and it provides, in pertinent part, as follows:
A. All establishments that sell or serve raw oysters must display signs, menu notices, table tents, or other clearly visible messages at point of sale with the following wording: "THERE MAY BE A RISK ASSOCIATED WITH CONSUMING RAW SHELLFISH AS IS THE CASE WITH OTHER RAW PROTEIN PRODUCTS. IF YOU SUFFER FROM CHRONIC ILLNESS OF THE LIVER, STOMACH OR BLOOD OR HAVE OTHER IMMUNE DISORDERS, YOU SHOULD EAT THESE PRODUCTS FULLY COOKED." . . .
In Gregor, the Louisiana Supreme Court held that DHH has a mandatory duty to properly enforce this provision of the sanitary code by ensuring that every restaurant post sufficient warnings regarding the health hazards associated with the ingestion of raw oysters at the "point of sale." In Gregor, the court determined that the "point of sale" was at the dining room table where the raw oysters were ordered. Although the restaurant had an oyster warning sign posted in its oyster bar, since there were no signs, menus notices, table tents, or other clearly visible messages conveying the warning in the dining room where the order for oysters was made, DHH was held liable for damages resulting from its negligent failure to enforce this provision at the "point of sale." Gregor, XXXX-XXXX at pp. 12-13; 851 So.2d at 967-68. However, the Supreme Court reversed the appellate court's finding that DHH was 75% at fault for its negligent enforcement of the sanitation code and that the restaurant was 25% at fault and it changed the apportionment of fault to 50% each. The basis for the increasing the restaurant's fault was the fact that not only did the restaurant fail to give any warning to patrons who ordered raw oysters in its dining rooms, which accounted for 20-25% percent of its sales of raw oysters, but it also "failed to give adequate warning to its oyster bar patrons because the clutter surrounding the signage." Gregor, XXXX-XXXX at pp. 16-17; 851 So.2d at 970. Thus, on the issue of the failure to place any warnings at the "point of sale," both the restaurant and the DHH were held responsible. However, the "clutter" issue with regard to the warnings at the *680 oyster bar was attributable solely to the restaurant.
Accordingly, in this case, DHH had a mandatory duty under the sanitary code to ensure that Jazz Seafood & Steakhouse posted adequate warnings regarding the consumption of raw shellfish at the "point of sale." DHH contends, in its motion for summary judgment, that it fulfilled its duty under the sanitary code with regard to Jazz Seafood & Steakhouse, that there is an absence of factual support that DHH breached this  an element essential to their negligence claim  and therefore, DHH cannot be held responsible to the plaintiffs for any damages sustained as a result of the consumption of raw oysters by Mr. Bergeron.
In support of its motion for summary judgment, the DHH submitted the deposition testimony of Clarence Hebert Francis, a sanitarian employed by DHH. According to Mr. Francis's testimony, as a sanitarian, his duties included inspecting any "retail food operation" (restaurants, grocery stores, or any other place where retail food was sold) in the city of Kenner to ensure that those places complied with their responsibilities under the sanitary code, including the obligation to post notices or warning pertaining to the consumption of raw shellfish. Mr. Francis testified that DHH guidelines provided that restaurants were to be inspected at least four times a year, and that he was responsible for inspecting the Jazz Seafood & Steakhouse in 2000 and in 2001. Mr. Francis testified that he never cited Jazz Seafood & Steakhouse for the failure to comply with posting the official notice pertaining to eating raw shellfish, that Jazz Seafood complied with the warning requirements for raw shellfish by posting three to four notices at the oyster bar and by placing the warning on its menu, and that the warnings were visible and legible.
According to the documentary evidence submitted during Mr. Francis's deposition testimony, the warning signs at the oyster bar at Jazz Seafood & Steakhouse provided: "WARNING: THERE MAY BE A RISK ASSOCIATED WITH, [sic] CONSUMING RAW SHELLFISH (OYSTERS), IF YOU SUFFER FROM CHRONIC ILLNESS OF THE LIVER OR BLOOD OR IMMUNE DISORDER. YOU SHOULD EAT THESE PRODUCTS FULLY COOKED!!!" Additionally, the warning on the menu at Jazz Seafood & Steakhouse provided: "WARNING THERE MAY BE A RISK ASSOCIATED WITH CONSUMING RAW SHELLFISH AS IS THE CASE WITH OTHER RAW PROTEIN PRODUCTS IF YOU SUFFER FROM CHRONIC ILLNESS OF THE LIVER, STOMACH OR BLOOD OR HAVE OTHER IMMUNE DISORDERS, YOU SHOULD EAT THESE PRODUCTS FULLY COOKED!!!"
Mr. Francis acknowledged that there was a slight difference between the warning signs posted at the oyster bar (and on the menu) at Jazz Seafood & Steakhouse and the warning required by the sanitary code; however, Mr. Francis stated that the warnings in place at Jazz Seafood & Steakhouse accomplished the purpose of the sanitary code provision, which was to warn consumers of the dangers of eating raw oysters. In fact, Mr. Francis stated that the notices posted at Jazz Seafood & Steakhouse were a little "stronger" than that required by the sanitary code because the word "warning" appeared in its notice (which is not required by the sanitary code provision), and because Jazz Seafood & Steakhouse's notice specifically referenced both oysters and shellfish rather than just shellfish.
Lastly Mr. Francis testified that after he received a complaint about the incident *681 involving Mr. Bergeron, he went to Jazz Seafood & Steakhouse on July 31, 2001, and the oyster warning notices were present at the oyster bar and on the menu.
In opposition to DHH's motion for summary judgment, Jazz contends that there are genuine issues of material fact as to whether there were any oyster warnings in place in the restaurant, whether any warnings that were in place were adequate, and whether DHH breached its duty under the sanitary code. Thus, Jazz contends that dismissing DHH from the plaintiffs' lawsuit would deprive Jazz of the comparative offset from any fault attributable to DHH with regard to the presence and adequacy of the warnings in accordance with Gregor. In opposition to the motion for summary judgment, Jazz submitted the deposition testimony of Mr. Bergeron; Leon Casadaban and Bruce Jay Reiben, Mr. Bergeron's co-workers who joined Mr. Bergeron for dinner at Jazz Seafood & Steakhouse after Mr. Bergeron had consumed the raw oysters; Mr. Francis; and David Lee Bowman, the Jazz Seafood & Steakhouse employee who prepared the warning signs posted in the restaurant's oyster bar.
According to the deposition testimony of Mr. Bergeron, he ate the raw oysters at the oyster bar, and did not order the raw oysters from the menu. He testified that while sitting in the oyster bar at Jazz Seafood & Steakhouse on July 23, 2001, he did not see any warnings, cards, or others notices warning about the danger of eating raw seafood or raw oysters.
Both Mr. Casadaban and Mr. Reiben testified in their depositions that they did not see or "[take] notice of any signs" or notices containing a warning about the consumption of raw oysters at the Jazz Seafood & Steakhouse on July 23, 2001. Mr. Casadaban testified that after the incident involving Mr. Bergeron, he went to Jazz Seafood & Steakhouse to see if there were any warnings on the menus, and that he did not see any warning signs on the tables or any signs hanging on the walls.
Mr. Bowman's deposition testimony indicated that he had prepared the warning signs at Jazz Seafood & Steakhouse on his computer, and that he was instructed to make the warnings larger after the investigation into the incident involving Mr. Bergeron commenced. Mr. Bowman also acknowledged that the warning signs he had prepared were slightly different than the warning required by the sanitary code, and that the warning signs had been "retyped" to conform to the language of the sanitary code after the incident involving Mr. Bergeron.
Based on our de novo review of the record, we find there was no genuine issue of material fact, and summary judgment was appropriate as a matter of law. At issue in the plaintiffs' case against the DHH was the existence of the warning signs at the "point of sale," and thus, whether DHH had breached its duty to enforce the sanitary code, whereas at issue in the plaintiffs' case against Jazz is allegedly inconspicuous warnings or sign "clutter." The evidence submitted by DHH established that the oyster warnings were posted or displayed at Jazz Seafood & Steakhouse in the oyster bar where Mr. Bergeron ordered the oysters  the "point of sale"  in accordance with the sanitary code and that the had DHH fulfilled its duty to enforce the sanitary code by performing routine inspections of Jazz Seafood to ensure its compliance with the sanitary code. While the evidence submitted by Jazz indicated that Mr. Bergeron and his dinner companions did not see (or take notice of) the warning signs pertaining to oysters, this evidence was insufficient to establish that the signs were not present at the oyster bar or that the inspections by DHH to ensure compliance *682 with the sanitary code were improper or deficient. Rather, such evidence addresses the plaintiffs' alternative claims against Jazz, i.e., that the signs were inconspicuous or there was sign "clutter" rendering the warnings less noticeable. Accordingly, we find the evidence submitted by Jazz was insufficient to establish that there was a genuine issue of material fact as to whether DHH had breached its duty to enforce the sanitary code.

IV. CONCLUSION
The evidence submitted by the DHH in support of its motion for summary judgment negated breach of duty, an essential element of the plaintiffs' claim and the claims of Jazz that fault on the part of DHH would reduce its own percentage of fault. When the burden shifted to Jazz, Jazz failed to produce factual support sufficient to establish that it would be able to satisfy its evidentiary burden of proof at trial on this element. Therefore, there is no genuine issue of material fact, and summary judgment was appropriate as a matter of law. The December 22, 2004 and the March 14, 2005 judgments of the trial court are hereby affirmed.
All costs of this appeal are assessed to the defendants/appellants, Frank Billeaudeau and Elsa Billeaudeau, d/b/a Jazz Seafood & Steakhouse and Argonaut Great Central Insurance Company.
AFFIRMED.
GAIDRY, J., dissents and assigns reasons.
GAIDRY, J.
I disagree with the majority's application of Gregor v. Argenot Great Central Ins. Co., XXXX-XXXX, pp. 1-2 (La.5/20/03), 851 So.2d 959, 961, to the facts of this case. Specifically, I disagree with the majority's statement that in Gregor, the "clutter" issue was attributable solely to the restaurant. Gregor merely states that the restaurant bears some liability for the clutter surrounding the warning sign; it does not state that the restaurant is solely liable for the clutter; it does not exonerate DHH for the clutter. I believe that the use of Gregor to dismiss DHH on a motion for summary judgment in the instant suit goes beyond the scope of the Gregor holding. For this reason, I respectfully dissent.
NOTES
[1] Vibrio vulnificus occurs naturally in saltwater environments. Whenever vibrio vulnificus is present in water where an oyster lives, the oyster will contain the bacteria. Generally, vibrio vulnificus is dangerous only to persons with chronic health problems, gastric disorders, liver diseases, and immune disorders. Proper cooking will kill vibrio vulnificus bacteria present in an oyster. See Gregor v. Argenot Great Central Ins. Co., XXXX-XXXX, pp. 1-2 (La.5/20/03), 851 So.2d 959, 961.
[2] The plaintiffs did not oppose DHH's motion for summary judgment.
[3] On May 4, 2005, the trial court issued written reasons for judgment, which set forth seven specific findings as the basis for its prior rulings. These written reasons were issued in response to a request for written reasons by Jazz and a remand by this court ordering that the trial court comply with that request. See Bergeron v. Frank Billeaudeau, et al., 2005 CW 0769 (La.App. 1st Cir. 4/29/05) (unpublished writ action). However, also contained in the trial court's "Written Reasons for Judgment" was the following decretal language: "IT IS FURTHER ORDERED that Judgment be, and is hereby rendered and entered in favor of the defendant mover, The Department of Health and Hospitals, and against the Plaintiff, Godfrey Bergeron." Notably absent from these written reasons for judgment, which also purports to be judgment, are words that grant the DHH's motion for summary judgment and that dismiss the DHH from this suit. See Carter v. Williamson Eye Center, 2001-2016, p. 2 (La.App. 1st Cir. 11/27/02), 837 So.2d 43, 44 (holding that a final judgment must identify the party in whose favor judgment is rendered, the party against whom the judgment is rendered, and the relief granted or denied). As such, to the extent that the written reasons contain or set forth a judgment, for the record, we note that such judgment is of no legal effect because it lacks appropriate decretal language.
[4] See also La. Admin. Code 51:IX.319(D)(1).