WHIPPLE, J.
12This matter is before us on appeal by plaintiffs, Lydia and Michael Bergeron,[1] from a judgment of the trial court, granting summary judgment in favor of the remaining defendants, Frank and Elsa Bil- *258 leaudeau, d/b/a Jazz Seafood & Steakhouse, and their insurer, Argonaut Great Central Insurance Company, (hereinafter referred to collectively as “Jazz”) and dismissing plaintiffs’ remaining claim. For the reasons that follow, we affirm.
FACTS AND PROCEDURAL HISTORY
This appeal arises from a suit for damages filed by Godfrey Bergeron seeking recovery for injuries resulting from the consumption of raw oysters at Jazz Seafood & Steakhouse. The facts giving rise to this suit and its procedural history were set forth in detail in this court’s prior published opinion involving the dismissal of the Department of Health and Hospitals (hereinafter referred to as the “DHH”) as a defendant in the instant suit in Bergeron v. Argonaut Great Central Insurance Company, 2006-0813 (La.App. 1st Cir.2/9/07), 958 So.2d 676, writ denied, 2007-0418 (La.3/28/07), 951 So.2d 1109. The basic underlying facts and procedural history are reiterated herein, as follows:
On July 23, 2001, Godfrey Bergeron ate approximately one dozen raw oysters in the oyster bar at the Jazz Seafood & Steakhouse in Kenner, Louisiana. Approximately two to three days later, Mr. Bergeron became very ill and was admitted to the Medical Center of Southwest Louisiana. Mr. Bergeron was diagnosed with a vibrio vulnificus infection, a flesh-eating bacterial infection, which he contracted from ingesting raw oysters that contained the vibrio vulnificus bacteria.FN1 As a result of the vibrio vulnificus infection, Mr. Bergeron required an extensive hospital stay, incurred significant medical expenses, and sustained permanent damage to his nerves and skin.
On June 19, 2003, Mr. Bergeron and his wife instituted this action for damages against Jazz and DHH. Specifically with regard to Jazz, the plaintiffs alleged that Jazz was obliged by the Louisiana sanitary code to, but did not, post a warning to susceptible persons of the dangers of eating raw oysters, and alternatively, that any warning which it posted was inadequate and was hidden or so inconspicuous that it was inadequate. With regard to DHH, the plaintiffs alleged that DHH had an affirmative duty to cause restaurants, such as Jazz Seafood & Steakhouse, to post warnings about the dangers of eating raw oysters and that DHH failed to perform [its] duty.
The DHH moved for summary judgment alleging that it could not be held liable to the plaintiffs for any damages suffered as a result of eating raw oysters because it had complied with its obligation to enforce the sanitary code with regard to Jazz Seafood & Steakhouse, and therefore, DHH sought dismissal from these proceedings. Jazz filed an opposition to the motion for summary judgment on the basis that the dismissal of DHH from the plaintiffs’ lawsuit would deprive it of a comparative offset for any fault attributable to DHH with regard to the presence and adequacy of the warnings.FN2 On December 22, 2004, the trial court signed a “final judgment” granting DHH’s motion for summary judgment and dismissing the plaintiffs’ claims against it with *259 prejudice, and on March 14, 2005, the trial court signed a judgment denying Jazz’s motion for new trial.
Bergeron v. Argonaut Great Central Insurance Company, 958 So.2d at 677-678.
Jazz appealed the trial court’s dismissal of the DHH and, on de novo review, another panel of this court determined that there was no genuine issue of fact and that dismissal by summary judgment of plaintiffs’ claims against DHH was appropriate as a matter of law. See Bergeron v. Argonaut Great Central Insurance Company, 958 So.2d at 681. In affirming the trial court’s grant of summary judgment in favor of DHH, this court determined as follows:
RBased on our de novo review of the record, we find there was no genuine issue of material fact, and summary judgment was appropriate as a matter of law. At issue in the plaintiffs’ case against the DHH was the existence of the warning signs at the “point of sale,” and thus, whether DHH had breached its duty to enforce the sanitary code, whereas at issue in the plaintiffs’ case against Jazz is allegedly inconspicuous warnings or sign “clutter.” The evidence submitted by DHH established that the oyster warnings were posted or displayed at Jazz Seafood & Steakhouse in the oyster bar where Mr. Bergeron ordered the oysters-the “point of sale”in accordance with the sanitary code and that ... DHH fulfilled its duty to enforce the sanitary code by performing routine inspections of Jazz Seafood to ensure its compliance with the sanitary code. While the evidence submitted by Jazz indicated that Mr. Bergeron and his dinner companions did not see (or take notice of) the warning signs pertaining to oysters, this evidence was insufficient to establish that the signs were not present at the oyster bar or that the inspections by DHH to ensure compliance with the sanitary code were improper or deficient. Rather, such evidence addresses the plaintiffs’ alternative claims against Jazz, i.e., that the signs were inconspicuous or there was sign “clutter” rendering the warnings less noticeable. Accordingly, we find the evidence submitted by Jazz was insufficient to establish that there was a genuine issue of material fact as to whether DHH had breached its duty to enforce the sanitary code.
Bergeron v. Argonaut Great Central Insurance Company, 958 So.2d at 681-682.[2]
Thereafter, on November 6, 2007, Jazz filed a motion for partial summary judgment, seeking: (1) dismissal of plaintiffs’ claim that there were no such warnings posted at the point of sale on the accident date; (2) the barring of any evidence relating to the existence of such warnings; and (8) the restricting of plaintiffs’ case against Jazz, and all evidence set forth therein, solely to its remaining cause of action as to the adequacy and visibility of the DHH warnings as determined existed at the time plaintiff allegedly ingested the raw oysters.
After a hearing, the trial court rendered judgment on December 18, 2007, granting Jazz’s motion for partial summary judgment. Specifically, the trial | ¿court dismissed plaintiffs’ claim that Jazz failed to post a warning of the dangers of eating raw oysters as required by the Louisiana Sanitary Code and limited plaintiffs’ sole *260 remaining cause of action against Jazz to “the allegation that the warnings found to have been posted by Jazz Seafood & Steakhouse on the date of the accident at the point of sale as mandated by the Sanitary Code were allegedly inadequate due to ‘clutter’ and/or interference.”[3]
On November 2, 2009, Jazz filed a motion for “final” summary judgment, seeking dismissal of plaintiffs’ sole remaining claim based on the inadequacy of the posted warnings. In this motion, Jazz contended that no question of material fact remained, as the evidence showed that the warning signs posted at the time of sale were “clear, visible and unambiguous.” Thus, Jazz contended, it was entitled to dismissal of plaintiffs’ claims as a matter of law.
In support of its motion for summary judgment, Jazz submitted and relied upon, inter alia: (1) plaintiffs’ petition for damages; (2) the court’s written reasons for judgment; (3) the December 18, 2007 judgment granting partial summary judgment; (4) maps of the restaurant; (5) excerpts of the deposition of DHH Inspector Clarence Herbert Francis; (6) a warning sign; (7) the affidavit of Jazz employee David Lee Bowman; (8) the affidavit of defense counsel Eric J. Halverson, Jr.; (9) the deposition of plaintiffs’ expert Edward W. Karnes; (10) a photograph; (11) a letter from defense expert Dr. Jane T. Welch to Eric Halverson; (12) another photograph; (13) excerpts of the deposition of Godfrey J. Bergeron; (14) excerpt of the deposition of Dr. Edward Kemp Coreil; (15) the police report; and (16) Jazz’s itemized receipt for plaintiffs’ meal on July 23, 2001.
| nIn response, plaintiffs filed a motion to strike, contending that several of Jazz’s exhibits offered in support of its motion for summary judgment were inauthentic, inadmissible, constituted hearsay, and were otherwise inadmissible as many were “tainted by counsel’s editorializing.” Plaintiffs offered excerpts of Jazz employee Kelly Riepele’s deposition testimony in support of its motion to strike.
The motions were heard before the trial court on January 4, 2010. On January 5, 2010, the trial court orally granted the motion for summary judgment. A “Final Judgment Dismissing Plaintiffs’ Case With Prejudice” was signed by the trial court on January 14, 2010, wherein the trial court ruled that “plaintiffs failed to present any question of material facts as to the existence of any clutter or visual obscurement of the one or more signs warning of the dangers of consuming raw shellfish — as required by the Louisiana Sanitary Code— within easy view of the plaintiff from the position at the oyster bar [where] plaintiff consumed raw oysters, i.e., the point of sale.”
As noted above, on March 12, 2010, plaintiffs filed a motion seeking to substitute the parties-plaintiff, which the trial court granted on March 16, 2010. Given the trial court’s grant of substitution, the parties submitted, and on March 22, 2010, the trial court signed, a “Stipulation and Amended Judgment” wherein, pursuant to the parties’ agreement, the trial court ordered that: (1) the portion of the January 14, 2010 judgment dismissing the claims of Godfrey Bergeron be vacated as to him and made applicable to the substituted parties for the decedent, Lydia and Michael Bergeron; (2) the claims of Lydia and Michael Bergeron, as substituted parties plaintiff, be dismissed with prejudice for the precise and exact reasons set forth in the original January 14, 2010 judgment, as adopted by reference, reserving to the *261 substituted parties their rights to appeal the January 14, 2010 judgment as it applies to them; and (3) all remaining parts |7of the original judgment rendered on January 14, 2010, including but not limited to the dismissal of the separate claims of plaintiff, Lydia Bergeron, remained unchanged and in full force and effect.
On March 19, 2010, plaintiffs filed a motion for a devolutive appeal from the trial court’s January 14, 2010 judgment “as amended by” the trial court’s “March 19, 2010” judgment,[4] which was granted by the trial court on March 28, 2010. On April 12, 2010, plaintiffs filed a “Motion for Appeal and Motion to Consolidate Appeals” seeking to file a devolutive appeal from the trial court’s amended judgment of March 22, 2010 and to consolidate the two appeals in the case. Therein, plaintiffs explained that when they filed their motion to appeal the January 14, 2010 judgment and the amended judgment on March 19, 2010, they believed that the amended judgment had been signed by the trial court earlier on March 19, 2010, when the amended judgment was not actually signed by the trial court until March 22, 2010. Thus, in order to preserve their rights on appeal, plaintiffs moved to appeal the amended judgment of March 22, 2010, and further consolidate the two appeals as they arose from “the very same subject matters.” On April 15, 2010, the trial court granted plaintiffs’ motion to appeal the March 22, 2010 judgment of the trial court, but denied plaintiffs request to consolidate the appeals.
In their sole assignment of error on appeal, plaintiffs contend that the trial court erred in granting Jazz’s motion for summary judgment where disputed questions of material fact remain.
J^MOTION TO DISMISS SECOND APPEAL
At the outset, we will address a “Motion to Dismiss Second Appeal as Redundant and Invalid” filed with this court by Jazz requesting that the second appeal, granted by the trial court on April 15, 2010, be dismissed. Therein, Jazz contends that the second appeal is invalid and is a duplicate of the original appeal granted on March 23, 2010, which was already perfected. We agree.
Although plaintiffs filed their original motion for appeal of the January 14, 2010 judgment and the amended judgment on March 19, 2010, prior to the trial court’s signing of the amended judgment on March 22, 2010, the trial court subsequently granted the original motion for appeal on March 23, 2010.
Louisiana Code of Civil Procedure article 1911 provides in part:
Except as otherwise provided by law, every final judgment shall be signed by the judge. For the purpose of an appeal as provided in Article 2083, no appeal may be taken from a final judgment until the requirement of this Article has been fulfilled.
Louisiana Code of Civil Procedure article 1911 has been interpreted to provide that an appeal granted before the signing of a final judgment is subject to dismissal until the final judgment is signed. However, once the final judgment has been signed, any previously existing defect has been cured, and there is no useful purpose in dismissing the otherwise valid appeal. Overmier v. Traylor, 475 So.2d 1094-1095 (La.1985) (per curiam).
*262 In the instant case, this appeal was granted by the trial court one day after the judgment was signed. Thus, the original appeal was not premature and was never subject to dismissal. The filing of plaintiffs’ motion for appeal on March 19, 2010, three days prior to the signing of the amended judgment, and their mistaken assumption therein that the amended judgment had been signed by the trial court on March 19, 2010, are of no moment. Further, to the extent such events could be considered “defects,” any defects were cured when the trial court Rsigned the motion for appeal after the amended judgment was actually signed in accordance with LSA-C.C.P. art. 1911.
Thus, because plaintiffs’ original motion for appeal is valid, we grant Jazz’s motion to dismiss the second appeal granted herein.
MOTION TO STRIKE
Turning to the merits, we first note that in response to Jazz’s motion for summary judgment, plaintiffs filed a motion to strike, challenging the admissibility and authenticity of several of Jazz’s exhibits in support of its motion for summary judgment.[5] We note that although the trial court’s oral reasons and both the January 14, 2010 judgment and the amended judgment of March 22, 2010 are silent as to plaintiffs’ motion to strike, where a judgment is silent as to any demand or issue that was litigated, that issue or demand is deemed rejected. Davis v. Benton, 2003-0851 (La.App. 1st Cir.2/28/04), 874 So.2d 185, 188 n. 1. Moreover, although plaintiffs did not specifically assign error to the trial court’s denial of their motion to strike in their appeal, they argue in brief that the trial court erred in relying on these exhibits in granting summary judgment. Thus, we will review the propriety of the trial court’s denial of plaintiffs’ motion to strike.
In general, plaintiffs complain of overreaching by counsel for Jazz and of his “editorializing” of several of the restaurant diagram and photo exhibits by commenting or explaining the marks placed on them by the witnesses. With reference to these complaints, after reviewing the marked exhibits herein, we note that although we find this conduct to be inappropriate, any error therein is, |1flat best, harmless absent a showing that the trial court relied on these remarks in rendering its decision.
Plaintiffs further complain that the report of Jazz’s expert, Jane T. Welch, Ph.D., was inadmissible hearsay under LSA-C.C.P. art. 967, which they contend requires that affidavits supporting motions for summary judgment shall be made on personal knowledge. We disagree.
Louisiana Code of Civil Procedure article 967 addresses the affidavits of experts and provides, in pertinent part:
The supporting and opposing affidavits of experts may set forth such experts’ opinions on the facts as would be admissible in evidence under Louisiana Code of Evidence Article 702, and shall show affirmatively that the affiant is competent to testify to the matters stated therein.
Moreover, although plaintiffs argue *263 there has been no Daubert[6] hearing to establish Dr. Welch’s credentials, we note that plaintiffs raised no specific challenges to Dr. Welch’s qualifications or to the methodology she used in forming her expert opinion in their motion to strike, memorandum in support thereof, or in their brief on appeal. Moreover, the record is devoid of any showing that plaintiffs attempted to set a hearing or deposition to establish a basis for challenging Dr. Welch’s opinions.[7] Thus, in denying the plaintiffs’ motion to strike, the trial court implicitly ruled that Dr. Welch was qualified to render an opinion in this matter.
On review, and considering the record before us, we find no abuse of the trial court’s discretion in this determination or in the denial of plaintiffs’ motion to strike.
InSUMMARY JUDGMENT LAW
A motion for summary judgment is properly granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the mover is entitled to judgment as a matter of law. LSA-C.C.P. art. 966(B). The summary judgment procedure is expressly favored in the law and is designed to secure the just, speedy, and inexpensive determination of non-domestic civil actions. LSA-C.C.P. art. 966(A)(2).
The mover bears the burden of proving that he is entitled to summary judgment. LSA-C.C.P. art.' 966(C)(2). However, if the mover will not bear the burden of proof at trial on the subject matter of the motion, he need only demonstrate the absence of factual support for one or more essential elements of his opponent’s claim, action, or defense. LSA-C.C.P. art. 966(C)(2). If the moving party points out that there is an absence of factual support for one or more elements essential to the adverse party’s claim, action, or defense, then the nonmoving party must produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden at trial. LSA-C.C.P. art. 966(C)(2). If the mover has put forth supporting proof through affidavits or otherwise, the adverse party may not rest on the mere allegations or denials of his pleading, but his response, by affidavits or otherwise, must set forth specific facts showing that there is a genuine issue for trial. LSA-C.C.P. art. 967(B).
In ruling on a motion for summary judgment, the trial court’s role is not to evaluate the weight of the evidence or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. Hines v. Garrett, 2004-0806 (La.6/25/04), 876 So.2d 764, 765 (per curiam). Despite the legislative mandate that summary judgments are now favored, factual inferences reasonably drawn from the evidence must be construed in favor of |12the party opposing the motion, and all doubt must be resolved in the opponent’s favor. Willis v. Medders, 2000-2507 (La.12/8/00), 775 So.2d 1049, 1050 (per curiam).
In determining whether summary judgment is appropriate, appellate courts review evidence de novo under the same criteria that govern the trial court’s determination of whether summary judgment is *264 appropriate. See Barnett v. Watkins, 2006-2442 (La.App. 1st Cir.9/19/07), 970 So.2d 1028, 1033, writ denied, 2007-2066 (La.12/14/07), 970 So.2d 537. Because it is the applicable substantive law that determines materiality, whether or not a particular fact in dispute is material can be seen only in light of the substantive law applicable to the case. Bezel v. Original Library Joe’s, Inc., 2001-1586 (La.App. 1st Cir.11/08/02), 838 So.2d 796, 800.
LAW AND DISCUSSION
In their petition for damages, plaintiffs asserted a cause of action against Jazz in negligence. In order for liability in negligence to attach under Louisiana’s traditional duty-risk analysis, a plaintiff must prove five separate elements: (1) duty (the defendant had a duty to conform his conduct to a specific standard of care); (2) breach of that duty (the defendant’s conduct failed to conform to the appropriate standard); (3) cause-in-fact (the defendant’s substandard conduct was a cause-in-fact of the plaintiffs injuries); (4) scope of liability or scope of protection (the defendant’s substandard conduct was a legal cause of plaintiffs injuries); and (5) damages (actual damages). Rando v. Anco Insulations, Inc., 2008-1163 (La.5/22/09), 16 So.3d 1065, 1086. A negative answer to any of the elements of the duty/risk analysis prompts a no-liability determination. Everett v. State Farm, Fire & Casualty Insurance Company, 2009-1699 (La.App. 1st Cir.3/26/10), 37 So.3d 456, 464.
|1sDue to the growing number of cases of vibrio vulnificus infections arising from the consumption of raw oysters, in 1991, the DHH published a rule requiring mandatory oyster warnings. The rule, which requires all restaurants that sell or serve raw oysters to provide clearly visible warnings about vibrio vulnificus at the point of sale, is presently found in Louisiana’s sanitary code, codified as La. Admin. Code 51:XXIII:1109, and provides, in pertinent part, as follows:
A. All establishments that sell or serve raw oysters must display signs, menu notices, table tents, or other clearly visible messages at the point of sale with either of the following wording:
1. “THERE MAY BE A RISK ASSOCIATED WITH CONSUMING RAW SHELLFISH AS IS THE CASE WITH OTHER RAW PROTEIN PRODUCTS. IF YOU SUFFER FROM CHRONIC ILLNESS OF THE LIVER, STOMACH OR BLOOD OR HAVE OTHER IMMUNE DISORDERS, YOU SHOULD EAT THESE PRODUCTS FULLY COOKED”; or
2. “CONSUMING RAW OR UNDERCOOKED MEATS, POULTRY, SEAFOOD, SHELLFISH OR EGGS MAY INCREASE YOUR RISK OF FOODBORNE ILLNESS, ESPECIALLY IF YOU HAVE CERTAIN MEDICAL CONDITIONS.”
In Gregor v. Argenot Great Central Insurance Company, 2002-1138 (La.5/20/03), 851 So.2d 959, 967, the Louisiana Supreme Court, interpreting the above provision in a similar vibrio vulnificus case, held that the DHH has a mandatory duty to properly enforce this provision of the sanitary code. Herein, the trial court previously determined, and this court affirmed, that the DHH fulfilled its mandatory duty to enforce the sanitary code by performing routine inspections of Jazz Seafood to ensure its compliance with the sanitary code.
The duty of a restaurant, however, under this provision is to warn the public by displaying “clearly visible messages at the point of sale” with either choice of suggested language. In Gregor, the Supreme Court held that the defendant restaurant therein was liable for failing to provide any warnings to patrons who *265 ordered raw oysters in its two dining rooms and for failing to give adequate warning to its oyster bar patrons where it only provided one warning sign that was surrounded by sign “clutter.” Gregor v. Argenot Great Central Insurance Company, 851 So.2d at 969-970.
On appeal, Jazz contends that based on the record herein, summary judgment rejecting plaintiffs’ sole remaining claim against Jazz, i e., “that the warnings found to have been posted by Jazz Seafood & Steakhouse on the date of the accident at the point of sale as mandated by the Sanitary Code were allegedly inadequate due to ‘clutter’ and/or interference” and dismissing plaintiffs’ cause of action, was proper herein. We agree.
In support of its motion for summary judgment, Jazz submitted a diagram attached to Bergeron’s deposition, where Bergeron marked his position at the point of sale at the restaurant bar on a diagram of the restaurant.
Jazz also presented the testimony of DHH Inspector Francis who testified that he routinely inspected Jazz Seafood four times a year from 1995 or 1996 through 2001 and also on July 31, 2001, approximately a week after Godfrey Bergeron purchased and consumed the raw oysters, and that Jazz was never cited with failure to comply with the official notice to post warnings. Inspector Francis further testified that he is familiar with the term “sign pollution” and that during the five years he inspected Jazz Seafood, he did not have any problem noticing the warning signs displayed at the bar at Jazz Seafood. He testified that sign pollution was not a factor in this case and that the bar did not contain numerous signs that would distract one from the warnings posted in accordance with the sanitary code provisions. In connection with his testimony, Inspector Francis likewise marked a diagram to indicate where the warning signs were posted at the bar. Notably, he testified that the signs were posted 11sthere on July 31, 2001, and in the five years preceding his inspection on July 31, 2001, shortly after Bergeron’s consumption of the oysters.
Jazz also presented the affidavit of David Bowman, the general manager of Jazz Seafood on July 23, 2001. Bowman stated that as general manager, he was responsible for posting the warnings cautioning customers of the dangers of consuming raw shellfish as required by the DHH. Bowman stated that he personally prepared the warning signs which appeared on the menus and walls of the restaurant. He further identified and attached to his affidavit one of the signs, which were prepared on 8 ½ by 11 sheets of paper, and stated:
WARNING: THERE MAY BE A RISK ASSOCIATED WITH, CONSUMING RAW SHELLFISH (OYSTERS), IF YOU SUFFER FROM CHRONIC ILLNESS OF THE LIVER OR BLOOD OR IMMMUNE DISORDER. YOU SHOULD EAT THESE PRODUCTS FULLY COOKED!!!
JAZZ SEAFOOD & STEAKHOUSE
Bowman stated that he posted the signs at various points in the restaurant, which he identified in an attached diagram, including, in particular, a sign posted at the front of the bar on the corner post facing where Godfrey Bergeron indicated that he was seated. Bowman further testified regarding his maintaining that the signs remained posted, noting that he was never made aware of any DHH inspections as they were all unannounced and spontaneous.
Jazz also submitted the deposition of Edward W. Karnes, Ph.D., plaintiffs’ expert in this case, who testified that the *266 instant case was quite unlike the Gregor case, where he was also called to offer expert testimony for the plaintiff Dr. Karnes explained that in Gregor, the one sign that was displayed behind the bar was imbedded among a number of other signs and was therefore | ^camouflaged. Dr. Karnes explained that competing signage or information is detrimental to the visual attraction of the sign and that from a human factor standpoint, it would not be unlikely or unreasonable for a person to fail to read a sign when competing information is present. Although Dr. Karnes testified that there were competing signs at the hostess station and at the bar from the view of the hostess station, he conceded that if the signage appeared as shown to him in a photo taken from the location where Bergeron was seated when he purchased and consumed his oysters, there was no “problem with the visual presentation.”
Jazz also submitted the expert opinion of Jane T. Welch, Ph.D., an expert in product information with an emphasis on the communication of safety information. After thoroughly reviewing and evaluating the supporting evidence in this case, Dr. Welch opined that Jazz Seafood’s safety information was adequate and prominently displayed.
Thus, Jazz contends, the evidence established that Bergeron’s position at the oyster bar was two seats away from a very large warning sign that was clearly visible at the point of sale pursuant to the requirements of the sanitary code and the burden shifted to plaintiffs to show that it could prove that there was “sign clutter” or “visual clutter” at the point of sale such that Bergeron would not have noticed the warnings.
In opposition to the motion for summary judgment, plaintiffs offered: (1) excerpts of the deposition testimony of Godfrey Bergeron; (2) excerpts of the deposition testimony of Leon Paul Casadaban; (3) a diagram of Jazz Seafood & Steakhouse; (4) excerpts of the deposition testimony of David Lee Bowman; (5) excerpts of the deposition testimony of Elise Theresa Kirkland; (6) diagrams of Jazz Seafood & Steakhouse; (7) excerpts of the deposition testimony of Lois Beeson Bistes; (8) a diagram of Jazz Seafood & Steakhouse; (9) excerpts of the | deposition testimony of Elsa Mandado Billeaudeau; (10) excerpts of the deposition testimony of Frank Billeaudeau; and (11) excerpts of the deposition testimony of Edward W. Kames.[8]
To the extent that plaintiffs presented evidence in an attempt to show that material issues of fact remained as to whether warning signs were posted, we note that this issue was disposed of when the trial court granted Jazz’s motion for partial summary judgment and dismissed plaintiffs’ claim that Jazz had failed to post the warnings as required by the Louisiana Sanitary Code. Moreover, in the previous opinion, this court specifically held “that the oyster warnings were posted or displayed at Jazz Seafood & Steakhouse in the oyster bar where Mr. Bergeron ordered the oysters — the ‘point of sale’ — in accordance with the sanitary code.” Bergeron v. Argonaut Great Central Insurance Company, 958 So.2d at 681. Thus, the above stated ruling is the law of this case. See Trans Louisiana Gas Company v. Louisiana Insurance Guaranty Association, 96-1477 (La.App. 1st Cir. 5/9/97), 693 So.2d 893, 896.
*267 Furthermore, while plaintiffs presented what they contend is conflicting evidence and testimony as to the number and location of signs posted in the restaurant, plaintiffs failed to show that material issues of fact remain as to the existence of any sign or visual clutter from Bergeron’s seated position at the bar such that the warnings were not “clearly visible messages at the point of sale,” as required by the Louisiana Sanitary Code.
Thus, on review of the evidence set forth by plaintiffs in opposition to summary judgment as to plaintiffs’ remaining cause of action against Jazz, i.e., that the mandated warnings posted on the date of the accident at the point of sale were allegedly inadequate due to visual “clutter,” we find that plaintiffs |18failed to make the required showing that there is a genuine issue remaining for trial. Accordingly, on de novo review, we agree that Jazz was entitled to judgment in its favor dismissing plaintiffs’ sole remaining claim as a matter of law.
CONCLUSION
For the above and foregoing reasons, the March 22, 2010 amended judgment of the trial court, granting summary judgment in favor of defendants Frank and Elsa Billeaudeau, d/b/a Jazz Seafood & Steakhouse, and their insurer, Argonaut Great Central Insurance Company, and dismissing plaintiffs’ remaining claim, is affirmed.
The “Motion to Dismiss Second Appeal as Redundant and Invalid” filed by Jazz is hereby granted.
Costs of this appeal are assessed against the plaintiffs/appellants, Lydia and Michael Bergeron.
AFFIRMED.

. Godfrey and Lydia Bergeron were the original plaintiffs in this suit. However, after Godfrey Bergeron’s death on August 5, 2009, Lydia Bergeron and her son, Michael Berger-on, Lydia and Godfrey's only child, filed an "Ex Parte Motion to Substitute Parties-Plaintiff" whereby Lydia and Michael Bergeron sought to be substituted as parties-plaintiffs in the place and stead of Godfrey Bergeron on March 12, 2010. The trial court signed an order allowing the substitution on March 16, 2010.

laFNl. Vibrio vulnificus occurs naturally in salt-water environments. Whenever vibrio vulnificus is present in water where an oyster lives, the oyster will contain the bacteria. Generally, vibrio vulnificus is dangerous only to persons with chronic health problems, gastric disorders, liver diseases, and immune disorders. Proper cooking will kill vibrio vulnificus bacteria present in an oyster. See Gregor v. Argenot Great Central Insurance Company, 2002-1138, pp. 1-2 (La.5/20/03), 851 So.2d 959, 961.

. The plaintiffs did not oppose DHH’s motion for summary judgment.

. The Supreme Court denied Jazz's application for writs of certiorari and review of this court’s opinion. See Bergeron v. Argonaut Great Central Insurance Company, 2007-0418 (La.3/23/07), 951 So.2d 1109.

. No appeal or application for writs was filed regarding this judgment.

. Although plaintiffs' motion for appeal states that the date of the amended judgment is March 19, 2010, the Stipulated and Amended Judgment filed on March 17, 2010, was actually signed by the trial court on March 22, 2010.

. Plaintiffs attached to their motion to strike excerpts of the deposition testimony of Jazz employee Kelly Riepele taken on. February 12, 2003, in the restaurant, at which time counsel for Jazz posted warning signs in an attempt to reconstruct the signage as posted on the date of the accident, as an illustration of and support for plaintiffs' allegation that defense counsel was acting more as a witness than an advocate and that the evidence was inauthentic.

. See Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993).

. In Independent Fire Insurance Company v. Sunbeam Corporation, 99-2181, 99-2257 (La.2/29/00), 755 So.2d 226, 235, the Supreme Court held that it is impractical for a party to be required to depose his or her own expert in order for that expert’s opinion to be admissible at the summary judgment stage.

. Plaintiffs filed a motion to supplement the appellate record with their opposition to Jazz’s motion for summary judgment, which was subsequently lodged with the record on appeal.